**No. 24-1737**

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHARLIE COLEMAN

*Plaintiff-Appellant,*

v.

BRANDON KENT, ET AL.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Michigan
No. 2:23-cv-172
Hon. Maarten Vermaat

**APPELLANT'S OPENING BRIEF**

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org

*Attorney for Plaintiff-Appellant Charlie Coleman*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-1737                    Case Name: Coleman v. Kent

Name of counsel: Samuel Weiss

Pursuant to 6th Cir. R. 26.1, Charlie Coleman
*Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ February 3, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Samuel Weiss

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08                                                                                                    Page 1 of 2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

JURISDICTIONAL STATEMENT ................................................................. 1

ISSUES PRESENTED.................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 1

SUMMARY OF THE ARGUMENT .............................................................. 4

STANDARD OF REVIEW............................................................................. 5

ARGUMENT.................................................................................................. 5

    I.   The District Court Erred in Dismissing Coleman's First Amendment Retaliation Claim ............................................................................... 5

    II.  The District Court Erred in Dismissing Coleman's Equal Protection Claim. 8

CONCLUSION............................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ................................. 11

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002) ..................................................... 6, 8

*Castleberry v. STI Grp.*, 863 F.3d 259 (3d Cir. 2017) .......................................... 12

*Davis v. Prison Health Servs.*, 679 F.3d 433 (6th Cir. 2012) ............................. 8, 9

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................. 5

*Farmer v. Brennan*, 511 U.S. 825 (1994) .............................................................. 12

*Haines v. Kerner*, 404 U.S. 519 (1972) ................................................................... 5

*Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010) ........................................................... 6

*Johnson v. California*, 543 U.S. 499 (2005) ............................................................ 8

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ................................................ 10

*Martinez v. Litteral*, 2018 WL 11464606 (6th Cir. Oct. 26, 2018) ....................... 11

*Robinson v. Killips*, No. 18-1485, 2019 WL 1931873 (6th Cir. Feb. 22, 2019) .... 10

*Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993) ................................. 11

*Swinton v. Potomac Corp.*, 270 F.3d 794 (9th Cir. 2001) ..................................... 12

*Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) ..................... 6, 7, 8

*Walker v. Baker*, No. 23-1232, 2023 WL 6380124 (6th Cir. Sept. 27, 2023) ...... 7, 8

*Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509 (6th Cir. 2001) .......................... 1, 5

**Statutes**

28 U.S.C. § 1291 ........................................................................................................ 1

28 U.S.C. § 1331 ........................................................................................................ 1

42 U.S.C. § 1983 ........................................................................................................ 1

**Other Authorities**

Fed. R. App. P. 4(a)(1)(A) ......................................................................................... 1

## JURISDICTIONAL STATEMENT

Charlie Coleman brought claims under the First and Fourteenth Amendments of the U.S. Constitution through 42 U.S.C. § 1983. The district court had jurisdiction under 28 U.S.C. § 1331. The district court entered judgment against Coleman on August 6, 2024. Judgment, R. 14, PageID.76. Coleman filed a timely notice of appeal on September 3, 2024. Notice of Appeal, R. 16, PageID.79; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.  Whether the district court erred in dismissing Coleman's First Amendment retaliation claim.

II. Whether the district court erred in dismissing Coleman's Equal Protection claim.

## STATEMENT OF THE CASE[1]

Throughout the events described here, Charlie Coleman was incarcerated in Marquette Branch Prison, a facility run by the Michigan Department of Corrections. Complaint, R. 1, PageID.2

---

[1] In reviewing a dismissal for failure to state a claim, this Court must construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

On November 8, 2021, prison staff released Coleman from segregation. *Id.* A correctional officer, last name Kent, demanded that Coleman take a signed cell evaluation sheet. *Id.* Coleman knew that taking the sheet would violate Michigan Department of Corrections (MDOC) policy, as before taking such a sheet a prisoner and authorized staff must inspect the cell to assure both the prisoner and staff that no property of the state is missing or damaged. Complaint, R. 1, PageID.3. Kent reacted to Coleman's response by saying, "You motherfucking nigger! Take this fucking cell sheet before you back to seg!" *Id.* Coleman threatened Officer Kent by saying he would file a grievance on him for these threatening. *Id.* A third-party staff member intervened and escorted Coleman to his cell without incident. *Id.*

On March 5, 2022 Officer Kent was making mail delivery rounds on Coleman's unit. *Id.* Coleman felt a prick in his left eye and saw a crumpled envelope lying on his cell door. *Id.* He looked and saw Officer Kent, cursing at Coleman, saying that he had thrown the envelope at his eye, and daring Coleman to do something about the attack. Complaint, R. 1, PageID.4. Coleman interrupted Kent and threatened to file a grievance against Officer Kent. *Id.* Kent responded, "Do it, and I will fuck you up again, nigger." *Id.* Coleman reached through the cell bars and struck Officer Kent. 4. Staff took Coleman to segregation. *Id.*

After the incident, Coleman protested to staff that he had not initiated the conflict but this attempt at mitigation met little success. Coleman told Captain Leach

2

the same day of the incident what had happened and that the camera footage would support him if Leach requested it. *Id.* Leach responded, "I'm not requesting shit, you coward, you can rot in seg." *Id.* When Coleman told Captain Leach this was a breach of protocol by refusing to investigate the incident and that he would write a misconduct, Leach responded, "You cannot file a grievance on a misconduct you dumb fucker." Complaint, R. 1, PageID.5. While in segregation, Coleman filed a request for medical help on his injured eye—medical staff refused to treat him, leaving him without an eye examination for eight months. *Id.*

A sergeant, last name Allen, investigated the grievance Coleman filed against Kent, telling Coleman that he was lying in the grievance and that Kent did not initiate the conflict. *Id.* Coleman asked Allen to review the camera footage to see otherwise. *Id.* Allen responded, "I'm never gonna go against my colleague. I'm not checking shit. So deal with your punishment." *Id.* Allen terminated Coleman's grievance, and Captain Leach later affirmed this denial. Complaint, R. 1, PageID.6. Leach did so as retaliation for filing the grievance. Complaint, R. 1, PageID.9.

The prison had a misconduct hearing against Coleman in which the hearing investigator said that he reviewed the camera footage and saw that Kent had initiated the conflict. Complaint, R. 1, PageID.6. The hearing officer also reviewed the footage and confirmed this conclusion but still found that Coleman was guilty of assault on staff. *Id.*

3

On September 5, 2023, Coleman filed a *pro se* complaint against several prison staff members for this incident including claims under the First Amendment for retaliation and under the Fourteenth Amendment for denial of equal protection. Opinion, R. 12, PageID.53. The magistrate judge on a pre-service screening order pursuant to the Prison Litigation Reform Act dismissed all of Coleman's claims without leave to amend and entered judgment against him. Opinion, R. 12, PageID.50; Judgment, R. 14, PageID.76. On his First Amendment retaliation claim, the court held that while filing a grievance is protected conduct under the First Amendment, no staff member took "adverse action" against him as a result. Opinion, R. 12, PageID.57. On Coleman's Equal Protection claim, the court wrote that Coleman "fail[ed] to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence," as his claims of discrimination were "wholly conclusory." Opinion, R. 12, PageID.69.

Coleman timely appealed. Notice of Appeal, R. 16, PageID.79.

### SUMMARY OF THE ARGUMENT

The district court erred in dismissing Coleman's claim under the First Amendment for retaliation. Although the district court held that Coleman failed to allege that Officer Kent had taken an "adverse action," specific threats of violence are prototypical adverse actions. The district court's error was particularly plain on

4

a pre-service screening order as this issue is a question of fact typically unfit for resolution as a matter of law.

The district court also erred in dismissing Coleman's claim under the Equal Protection Clause. Coleman alleges that Kent's mistreatment was motivated by racial animus as evidenced by the fact that Kent called him racial slurs while he was doing it. The district court's conclusion that Coleman had not alleged direct evidence of mistreatment motivated by racial discrimination was wrong.

## STANDARD OF REVIEW

This Court reviews a motion to dismiss for failure to state a claim under a de novo standard of review. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). Pro se filings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This Court must read Plaintiff's pro se complaint "indulgently" and accept Plaintiff's allegations as true. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## ARGUMENT

**I.  The District Court Erred in Dismissing Coleman's First Amendment Retaliation Claim.**

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part,

by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The district court conceded that filing a grievance, as Coleman did, is protected conduct but held that he faced no adverse action. Opinion, R. 12, PageID.57. The district court erred.

This Court has a relatively non-demanding standard for incarcerated plaintiffs to establish that they suffered the kind of "adverse action" needed to make out a First Amendment retaliation claim. *Thaddeus-X*, 175 F.3d at 394. To constitute an adverse action, the defendant's response to plaintiff's constitutionally protected conduct must be the type of response that would cause "a person of ordinary firmness" to stop engaging in that conduct. *Id.* Since the First Amendment affords individuals broad protection and courts are wary of intrusions on it, the chilling effect on a plaintiff's First Amendment rights from a defendant's action "need not be great in order to be actionable," and the adverse action requirement is meant only to screen out "inconsequential actions." *Id.* at 397–98. As a result, this Court recognizes "the threat of an adverse action" as actionable so long as the threat is "specific." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010).

"Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). It is a rare case, therefore, in which a court can resolve this question as a matter of law, much less on an unamended *pro*

6

*se* complaint on a pre-service screening order. *See Walker v. Baker*, No. 23-1232, 2023 WL 6380124, at *4 (6th Cir. Sept. 27, 2023).

The consideration of adverse action focuses on context so the history between Kent and Coleman is relevant. *See Thaddeus-X*, 175 F.3d at 398. The first interaction in Coleman's complaint was Kent's demand that Coleman violate MDOC policy and, when Coleman refused, saying, "You motherfucking nigger! Take this fucking cell sheet before you back to seg!" Complaint, R. 1, PageID.3. A third-party staff member intervened and escorted Coleman away. *Id.* In the next incident, Kent threw a crumpled sheet of paper at Coleman's eye and, when Coleman threatened to file a grievance, said, "Do it, and I will fuck you up again, nigger." Complaint, R. 1, PageID.4. When Coleman reacted and struck Kent, he was punished by staff who refused to consider who had started the conflict out of staff loyalty, a dynamic that Kent likely anticipated. Complaint, R. 1, PageID.4–6.

This is not the rare case in which courts should find a lack of adverse action as a matter of law. The threat of violence was specific: it was a threat of imminent violence; it was accompanied by a racial slur; it immediately followed a different act of violence; and it fit a pattern of retaliation and racialized threats immediately following Coleman's invocations of the grievance process. This is the type of physical threat that this Court has recognized as an adverse action. *Walker*, No. 23-

7

1232, 2023 WL 6380124, at *4; *Bell*, 308 F.3d at 605 (6th Cir. 2002); *Thaddeus-X*, 175 F.3d at 398. The district court erred, and this Court should reverse.

## II.    The District Court Erred in Dismissing Coleman's Equal Protection Claim.

"The Equal Protection Clause of the Fourteenth Amendment protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights," including in prison. *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012). Although substantive prison law standards are often deferential to prison officials, this is not the case in the context of racial discrimination—strict scrutiny still applies because of the unique illegitimacy of government action motivated by racial discrimination. *See Johnson v. California*, 543 U.S. 499, 502 (2005).

The district court cited to this Court's opinion in *Davis* to conclude that Coleman "fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence." Opinion, R. 12, PageID.69. This conclusion may be true as to indirect evidence but Coleman did provide direct evidence. He alleged that Kent threatened Coleman when he asked him to violate prison policies, saying "You motherfucking nigger! Take this fucking cell sheet before you back to seg!" Complaint, R. 1, PageID.3.  A third-party staff member had to intervene and escort Coleman back to his cell. *Id.* Then Kent assaulted Coleman by throwing a crumpled sheet of paper at his eye and, when Coleman threatened to

8

file a grievance about it, said, "Do it, and I will you fuck you up again, nigger." Complaint, R. 1, PageID.4. Kent's behavior led to Coleman striking Kent, which then sparked its own series of consequences. *Id.* Many allegations of racial discrimination face the evidentiary challenge that the government official did not shout racial slurs while they acted, but Coleman has no such problems in alleging racially motivated mistreatment.

*Davis* itself, upon which the district court relied, demonstrates the court's error in refusing to consider direct evidence of racist mistreatment. The plaintiff in *Davis* alleged that he was the only gay member of a prison work-release program and that his removal of the program, purportedly on the grounds that he was diabetic, was actually anti-gay animus. This Court held that even if the plaintiff's complaint "had failed to include allegations about similarly-situated prisoners, his complaint still should not have been dismissed at the pleadings stage." 679 F.3d at 440. This is because he had *direct* evidence of discrimination: differential treatment from guards who "ridiculed and belittled him." *Id.* at 436. This made his allegations of discrimination as plausible and therefore fit to survive a motion to dismiss. Notably, this Court held that these allegations stated a claim even though the court was merely applying rational basis review, a deferential standard on the opposite end of the spectrum from strict scrutiny.

9

*Davis* also cited and incorporated the reasoning of a Fifth Circuit case, *Johnson v. Johnson*, which had almost identical facts. 385 F.3d 503, 530 (5th Cir. 2004). The plaintiff in *Johnson* alleged differential treatment from prison staff—here, the failure to protect him from sexual assault—because he was gay. Defendants argued that because "mere comments alone do not violate the Equal Protection Clause, Johnson has not alleged that he has suffered any actionable discriminatory treatment." *Id.* The court rejected this argument as "misconstru[ing] the nature of Johnson's claim." *Id.* Johnson did "not contend that the comments made by certain defendants [we]re themselves actionable but instead "that he was denied protection because of his sexual orientation; the comments are relevant because they tend to reveal the defendants' reasons for their actions in denying him safekeeping." *Id.* The court, like *Davis*, held that this direct evidence of discrimination stated an equal protection claim despite the forgiving standard of rational basis review.

In multiple cases in identical procedural postures to the present one this Court has affirmed the principles from *Davis*, ones that dictate the outcome here. In *Robinson v. Killips*, a Black prisoner alleged that he was paid less than a white prisoner who did identical work. No. 18-1485, 2019 WL 1931873, at *2 (6th Cir. Feb. 22, 2019). The district court dismissed his complaint on pre-service screening, and this Court reversed, holding that although the plaintiff's allegations were somewhat conclusory, given "the liberal standards afforded a pro se litigant, racial

10

discrimination is at least a plausible explanation for the difference in treatment." *Id.* In *Martinez v. Litteral*, a Black prisoner alleged that prison staff permitted only white prisoners to access certain amenities. 2018 WL 11464606, at *2 (6th Cir. Oct. 26, 2018). The district court dismissed his claim on pre-service screening, and this Court reversed, holding that although the plaintiff's allegations were "sparse," the allegation of direct statements of racial discrimination were sufficient to merit reversal. *Id.*

Were there any doubt that Kent's actions constituted racial discrimination, courts have long recognized that someone in a position of authority over another calling that person a "nigger" is uniquely odious. Justice Kavanaugh, while on the D.C. Circuit, wrote that while one-off verbal harassment does not typically create a hostile work environment under Title VII, a single use of "nigger" is different. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring). The word "sums up … all the bitter years of insult and struggle in America, [is] pure anathema to African-Americans, and [is] probably the most offensive word in English." *Id.* (quotation marks and citations omitted); *see also Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment, than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates"); *Castleberry v. STI*

11

*Grp.*, 863 F.3d 259, 265 (3d Cir. 2017); *Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001) ("the word 'nigger' [is] perhaps the most offensive and inflammatory racial slur in English") (citation and quotation marks omitted). These cases all involved harassment less repugnant (because the slur was not paired with threats of physical violence) and in a less controlling environment—employers have some power over their employees but they have not "stripped them of virtually every means of self-protection and foreclosed their access to outside aid" the way that incarceration does. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). That makes the sufficiency of Coleman's allegations of racial discrimination by Kent even more plain.

## CONCLUSION

This Court should reverse and remand for further proceedings.

Date:  February 3, 2025


/s/ Samuel Weiss
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Charlie Coleman

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,746 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: February 3, 2025

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Charlie Coleman

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: February 3, 2025

/s/ *Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Charlie Coleman

Johnson v. Johnson, 385 F.3d 503, 530 (5th Cir. 2004)

Several cases since *Davis* have relied on


Equal Protection

Davis v. Prison Health Servs., 679 F.3d 433, 438 (6th Cir. 2012): although this was cited by the district court it's actually extremely helpful for us.
- First, this is *rational basis* review.
- "Moreover, even if Davis 439–40. Because his complaint "contains allegations that, if accepted as true, would constitute direct evidence that his removal from the public-works program was improperly motivated by anti-gay animus." 440. This direct evidence: Prison guards "treated him differently than other inmates, ridiculed and belittled him." 436.


- Also, incorporates re "direct" evidence the following Fifth Circuit case: Johnson v. Johnson, 385 F.3d 503, 530 (5th Cir. 2004)
- "He does not contend that the comments made by certain defendants are themselves actionable. Rather, his complaint repeatedly alleges that he was denied protection because of his sexual orientation; the comments are relevant because they tend to reveal the defendants' reasons for their actions in denying him safekeeping."

- "In most cases, a plaintiff lacks direct evidence of intentional discrimination, and he therefore will try to rely on evidence that two groups received different treatment, which can support an inference that the decisionmaker purposefully engaged in discrimination. But those kinds of inference-producing comparisons are unnecessary where the § 1983 plaintiff has direct evidence of discriminatory motive." 531 (Note: comments here are truly horrifying. But again, this is rational basis.)


Walker v. Baker, No. 23-1232, 2023 WL 6380124, at *4 (6th Cir. Sept. 27, 2023): Very helpful case citing *Davis*. Identical procedural posture. [note: good *First Amendment* retaliation case, actually not helpful here.]

Martinez v. Litteral, No. 18-5210, 2018 WL 11464606, at *2 (6th Cir. Oct. 26, 2018): Moderately helpful and also cites *Davis*.

Robinson v. Killips, No. 18-1485, 2019 WL 1931873, at *2 (6th Cir. Feb. 22, 2019): Another good one.


[paragraph connecting the above with the below, using *Martinez* and *Litteral*]